RUTLAND,
*February*,
1841.

ZEBEDIAH DEWEY *v.* JONATHAN C. THRALL *et al.*

Where a sale of personal property is perfected, as against creditors, by such a visible, notorious, and long continued change of possession, as that creditors may be presumed to have notice of the transaction, the purchaser may suffer the seller to use, or to perform any other service in regard to the thing, with the same safety he might a stranger.

TRESPASS, to recover the value of a horse, taken by Jonathan C. Thrall, as constable of Rutland, on an execution in favor of Reuben R. Thrall, against Harris Hosford, on the 12th October, 1838, and sold on said execution.

On the trial in the county court, the plaintiff introduced testimony tending to prove the following facts, viz : that he held a note against said Hosford, for $100 ; and, in July or August, 1831, made a contract with said Hosford to take a two year old colt, and the colt which Hosford's roan mare should bring the next spring, if she should bring one, and if she should not, plaintiff was to have $27 in lieu of the colt, for the hundred dollar note, and gave up the note. The mare brought a colt the next spring, (1832) which ran with the mare, and continued in Hosford's possession until the 18th November, 1832, which was the horse in question, at which time Hosford sold his farm, farming tools, and all his stock, including the roan mare, to plaintiff, and took his notes for $4000, and immediately thereafter, all the property of Hosford was attached, and he failed. Plaintiff had lived with Hosford ever since he was seven years old, and was his nephew. In 1827, when plaintiff was twenty-one years old, Hosford gave him a colt, and he afterwards exchanged that colt for another, which Hosford bought of plaintiff, and for which he gave his note for $100. Hosford was then in good circumstances, worth from eight to ten thousand dollars ; and this was the same note given up in 1831, before mentioned. After Hosford sold the farm to the plaintiff, he moved away, and the plaintiff went into possession, and continued in the possession of the farm, and kept the colt upon it, until it was old enough to use, and used it upon the farm, and occasionally let it to Hosford, to ride to Rutland, where Hosford then resided.

In July, 1838, plaintiff delivered the horse in question, to Hosford, to sell. Hosford brought him to Rutland, used him, when he had occasion to use a horse, offered him for sale, and offered to exchange him for other horses, and kept him from that time, until he was taken by the officer, on the 12th October, 1838.

The defendants introduced the execution on which the horse was taken and sold, and evidence, tending to show, that while Hosford had the horse in his possession, he called him his own, used him as his own, and offered to sell and exchange him as though he was his own, without disclosing his agency to the purchasers. They also introduced evidence, tending to show, that Mrs. Hosford claimed the horse as her property, in the presence of the plaintiff, and observed that they wanted to use him, and should take him home, to which the plaintiff made no reply; and the plaintiff introduced evidence tending to disprove these facts.

The defendants contended that the sale of the farm and stock, by Hosford to plaintiff, in November, 1832, was fraudulent, and, from the fact that the property was once the property of Hosford, and was suffered to go back into Hosford's possession, and to remain in his possession, and he used it as his own, as above stated, by plaintiff's permission, the sale was, in law, fraudulent, and the defendants were entitled to a verdict, and requested the court so to charge the jury. But the court instructed the jury that the facts disclosed by the evidence, did not amount to a fraud in law, and, notwithstanding the jury should find that the sale of the farm and stock, in November, 1832, was fraudulent, yet, if they should find that the contract, made in July or August, 1831, was not fraudulent, in fact, but was made *bona fide*, and that the plaintiff went into possession of the farm, and had the possession of the horse ever since 1832, to July, 1838, their verdict should be for the plaintiff; and to this charge the defendants excepted. The jury found a verdict for the plaintiff.

*R. R. Thrall*, for defendants.

It has been well settled, by repeated and uniform decisions, for the last thirty years, in this state, fortified by an accumulation of authority, which has received the sanction

of some of the ablest lawyers, and has been recognized and adopted as a rule of decision, by some of the most enlightened courts, both in this country and England, that, to give validity to a sale of personal chattels, as against creditors, there must be an actual, visible change of possession, which must be exclusive and continued. Twyne's case, 3 Coke, 80. Shep. Touch. 66. 2 T. R. 587. 2 Bulstrode, 222. Prec. in Chancery, 287. 13 Vin. Abr. 516. 1 Esp. Cases, 205. 1 Camp. Cases, 202. 4 Binney, 258. 1 Cranch, 309. 9 Johns. R. 337. 1 Swift's Dig. 269. *Durkee* v. *Mahony*, 1 Aik. 116. *Mott* v. *McNiel*, Ibid. 162. *Weeks* v. *Wead*, 2 Aik. 64.

The vendee, to acquire a title of personal chattels, against the creditors of the vendor, must not only take the actual possession, but must keep it, or it will be liable to be defeated. 1 Aik. 165.

In applying these principles to the case under consideration, it is proper for us to inquire, whether the direction to the jury, in the court below, was such as the merits of the case required, and as the court were requested and were bound to give.

Is it not clear and conclusive, that the possession of this horse, (if it ever was in the plaintiff,) was not exclusive and entire? The object of every fraudulent conveyance is, that the vendor may retain the use of the property, to the exclusion of the rights of his creditors. With this object in view, what would have been the natural result, if this whole transaction had been fraudulent? Would it not have been precisely what has transpired in this instance? Would not Hosford have permitted the colt to remain upon the farm, which he had fraudulently conveyed to his nephew, until it was old enough to become useful, and then take it into his own possession, thinking the possession of Dewey had been long enough to establish his title? Would this length of time, under these circumstances, take it out of the general rule, which requires that the vendee should not only take the possession, but keep it? Does it make any difference, in principle, whether the possession is changed for the space of one month, one year, or five years and particularly, when the property was not in a condition to be used? We think not. But if we are mistaken in this, under the charge of the court, we have a right to presume,

that the jury found, as the facts would warrant them in finding, that the conveyance from Hosford to Dewey, of the 18th November, 1832, was fraudulent, and was not a *bona fide* sale. Dewey was, therefore, the mere agent or tenant of Hosford, and, consequently, his possession was Hosford's possession.

*Clark* & *Harrington,* argued for the plaintiff, and cited 3 Stark. Ev. 1494, note 2. *Farnsworth* v. *Shepard* 6 Vt. R. 521. *Brackett* v. *Waite et al.,* 4 Vt. R. 389. *Durkee* v. *Mahoney,* 1 Aik. R. 116.

The opinion of the court was delivered by

REDFIELD, J.—How far a mere contract for property, not *in esse,* and not exclusively the result of labor and materials like manufactured articles made to order, and before delivery, will, as between the parties, vest any property, it is not necessary now to consider. Here was possession taken, and continued for many years. The jury have found the sale *bona fide,* upon sufficient consideration, and that delivery and change of posession accompanied and followed the sale, and that this change of possession was in good faith, and not merely colorable. We think, therefore, when the vendee retained the possession for nearly six years, the change of property is as complete as if the vendor had never owned it. It is true, the property being put into the hands of the former owner, and for the purpose of sale, may tend to raise more or less apprehension that the sale was not *bona fide;* but this a question of fact for the jury. After a sale of personal chattels has become perfected by such a visible notorious, and continued change of possession, that the creditors of the vendor may be presumed to have notice of it, the vendee may lend, or let, or employ the vendor to sell, or perform any other service about the thing with the same safety he may a stranger. This is fully settled by the case of *Farnsworth* v. *Shepard,* 6 Vt. R. 521.

Judgment affirmed.